IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY ANN OLGUIN,

    Plaintiff,

    vs.                                                Civ. No. 18-482 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed September 4, 2018, in support of Plaintiff Mary Ann Olguin's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On November 19, 2018, Plaintiff filed her Motion to Reverse and Remand for a Rehearing With Supporting Memorandum ("Motion"). Doc. 18. The Commissioner filed a Brief in Response on January 23, 2019 (Doc. 22), and Plaintiff filed a Reply on February 12, 2019. Doc. 23. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 8, 9.

## I. Background and Procedural Record

Plaintiff Mary Ann Olguin (Ms. Olguin) alleges that she became disabled on October 31, 2013, at the age of fifty-two because of "extreme post traumatic stress syndrome"; "extreme depression"; "thought process is extremely confused"; "no concentration"; "cannot meet deadlines due to confusion"; "right hand is deteriorating due to laceration of ulnar [nerve]"; "arthritis in hand and shoulder due to overcompensation"; "possibly had small stroke when working with [the City of Albuquerque]"; "problems breathing"; and "have had injuries to disk in neck and back." Tr. 214, 218 (some capitalization removed). Ms. Olguin completed a GED in 1977 and worked as a general construction inspector for the City of Albuquerque. Tr. 220. Ms. Olguin's date of last insured is June 30, 2019. Tr. 214.

On July 1, 2016, Ms. Olguin filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Her application was denied at the initial level (Tr. 78, 79-92, 108-111), and at reconsideration (Tr. 93, 95-107, 116-119). Upon Ms. Olguin's request, Administrative Law Judge (ALJ) Cole Gerstner held a hearing on December 28, 2017. Tr. 35-76. Ms. Olguin appeared at the hearing with attorney representative Feliz Martone.[2] *Id.* The ALJ took testimony from Ms. Olguin and from impartial vocational expert (VE) Molly Meloy Kelly. *Id.* On January 30, 2018, ALJ Gerstner issued a written decision concluding that Ms. Olguin was "not disabled" pursuant to the Act. Tr. 15-29. On April 3, 2018, the Appeals Council denied Ms. Olguin's request for review, rendering ALJ Gerstner's April 3, 2018 decision the final decision of the Commissioner of the Social Security Administration. Tr. 1-5. Ms. Olguin timely filed a complaint on May 23, 2018, seeking judicial review of the Commissioner's final decision. Doc. 1.

---

[2] Ms. Olguin is represented in this proceeding by Francesca J. MacDowell. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

4

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## III. Analysis

The ALJ determined that Ms. Olguin was not disabled at step five of the sequential evaluation. Tr. 27-29. In making this determination, the ALJ found at step one that Ms. Olguin met the insured status requirements through September 30, 2019, and that she had not engaged in substantial gainful activity since her alleged onset date. Tr. 17. At step two, the ALJ found that since her alleged onset date, Ms. Olguin had severe impairments of posttraumatic stress disorder (PTSD) and personality disorder, not otherwise specified. Tr. 18. He also found that Ms. Olguin's medically determinable impairments of osteoarthritis of the hands and shoulders were not severe. Tr. 18-19. The ALJ, however, determined that Ms. Olguin's impairments did not meet or equal in severity one the listings described in Appendix 1 of the regulations. Tr. 19-21. As a result, the ALJ proceeded to step four and found that Ms. Olguin had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She is limited to simple, routine tasks. Judgment would be limited to simple work-related decisions. She can have only occasional interactions with supervisors, co-workers and the general public. Changes in the work setting would be limited to simple work-related decisions.

Tr. 21. The ALJ concluded at step four that Ms. Olguin was not able to perform any past relevant work. Tr. 26-27. At step five, the ALJ determined based on Ms. Olguin's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Ms. Olguin could perform and that she was, therefore, not disabled. Tr. 27-29.

Ms. Olguin broadly argues that the ALJ's RFC assessment is without substantial evidence. In support, Ms. Olguin argues that (1) the ALJ failed to include functional limitations related to Ms. Olguin's shoulders, arms, and hands; (2) the ALJ improperly rejected State agency

examining psychological consultant Amy DeBernardi, Psy.D.'s opinion; (3) the ALJ improperly rejected Ms. Olguin's treating counselor's findings regarding her mental impairments; (4) the ALJ improperly misrepresented State agency examining medical consultant Athanasios Manole, M.D.'s opinion; and (5) the ALJ improperly concluded that Ms. Olguin's reports regarding the severity of her symptoms were inconsistent. Doc. 18 at 4-19. Ms. Olguin also argues that, at step five, the ALJ failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) related to the ALJ's RFC and Ms. Olguin's ability to reason. *Id.* at 19-20. Ms. Olguin further argues that because the ALJ's RFC is not supported by substantial evidence that she is not capable of performing any of the jobs the ALJ identified.

Because the Court finds the ALJ failed to resolve the apparent conflict between the VE testimony and the DOT related to the ALJ's RFC and Ms. Olguin's ability to reason, and because the error is not harmless, this case requires remand.

> **A.** **The ALJ Failed to Resolve the Conflict Between the VE's Testimony and the DOT for the Jobs of Document Preparer and Routing Clerk.**

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Relying on *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), Ms. Olguin argues that the ALJ failed to reconcile inconsistencies between his own finding that Ms. Olguin is "limited to simple, routine tasks," and the VE's testimony that Ms. Olguin could perform three jobs existing in significant numbers that, according to the DOT, require a reasoning level of three; *i.e.,* document preparer, routing clerk, and laundry worker. Doc. 18 at 19-22.[4]

---

[4] Ms. Olguin further argues that she cannot perform the remaining jobs identified – folder, laundry sorter, and recycler – because the medium level job is beyond Dr. Manole's functional assessment for lifting, and that the remaining two jobs, like *all* of the jobs, require frequent

7

The Dictionary of Occupational Titles classifies each job according to its required "General Educational Development" (GED). This classification "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Components of the Definitional Trailer, Appx. C, § III, 1991 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* The "reasoning" scale runs from one to six, with six signaling jobs that call for the most complex reasoning. A reasoning level of three indicates a job that requires the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and requires "[d]eal[ing] with problems involving several concrete variables in or from standardized situations." DOT, Appx. C, § III, 1991 WL 688702.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p and further clarified the ALJ's affirmative responsibility to ask about such conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

---

handling or fingering, which the ALJ failed to assess as part of the RFC. Doc. 18 at 19-22. Because the Court remands on a separate basis, it need not reach these arguments.

2000 WL 1898704, at *4.

Here, the ALJ failed to resolve the apparent conflict between the DOT and the VE's testimony about the document preparer and routing clerk jobs.[5] In *Hackett*, the Tenth Circuit found that a limitation to "simple routine work tasks" is more consistent with jobs requiring level two reasoning. 395 F.3d at 1176. In so doing, the Tenth Circuit agreed with the claimant that there was an apparent conflict between a claimant's inability to perform more than simple and repetitive tasks and the level three reasoning required by the jobs identified. *Id.* It held that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this conflict. *Id*.

The conflict between the ALJ's RFC and the jobs identified in this case is exactly the same conflict the Tenth Circuit addressed in *Hackett*: a limitation to "simple, routine tasks" is inconsistent with reasoning-level-three jobs. AR 21; *Hackett*, 395 F.3d at 1176. Under *Hackett* and SSR 00-4p, therefore, the ALJ was required to evaluate the apparent conflict and, based on his assessment of this conflict, either (1) explain why it was reasonable to conclude that Ms. Olguin would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job requirements and her abilities, or (2) reject the VE testimony due to the conflict.

The Commissioner contends that *Hackett* does not apply here because the Tenth Circuit did not consider whether the apparent conflict at issue could be explained by the fact that GED Reasoning Development Level describes a job performer's educational background and does not correspond to whether the job is skilled or unskilled. Doc. 22 at 19-22. Because Ms. Olguin has

---

[5] Ms. Olguin represents that the job of laundry worker requires a reasoning level of three. Doc. 18 at 20. It only requires a reasoning level of one. *See* DOT #361.687-018, 1991 WL 672992.

the education and prior training necessary to perform her past relevant work as a general construction inspector and traffic control specialist, which were rated as reasoning level four and three, respectively, the Commissioner contends that "she has acquired general educational knowledge commensurate with the requirements of jobs with a Reasoning Development Level of 3." *Id.* at 21.

This is a valid point, and one that certain unpublished cases in the Tenth Circuit appear to have adopted. *See Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("Job descriptions in the Dictionary of Occupational Titles contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job. There is no genuine dispute that Mounts retained the GED to perform the jobs as an appointment clerk, escort vehicle driver, or dispatcher, as testified to by the VE."); *Sandoval v. Barnhart*, 209 F. App'x 820, 825 (10th Cir. 2006) ("[t]he adequacy of Ms. Sandoval's educational development is not in dispute"). However, these cases did not cite *Hackett*, much less reconcile their reasoning with its holding. And, because they are unpublished, they are not precedential. Lower courts, therefore, must follow *Hackett* over the unpublished cases. The fact that *Hackett* did not consider this particular argument does not undermine its precedential effect. The Commissioner's argument that *Hackett* was wrongly decided, even if true, does not make *Hackett* any less controlling.

The Commissioner, however, also attempts to distinguish *Hackett*. Specifically, the Commissioner points out that in this case, unlike in *Hackett*, the VE testified that there was no conflict with the DOT. Doc. 22 at 21. Therefore, the Commissioner asserts that an ALJ may accept a VE's testimony that no conflict exists between the identified jobs and the DOT. *Id.* It is true that an ALJ could rely on a VE's explanation as to why no conflict exists when, as *Hackett* and SSR 00-4p require, the ALJ then explains why a claimant could satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job-requirements and the claimant's abilities. *Hackett*, 395 F.3d at 1176; SSR 00-4p. Had the ALJ provided such an explanation, this would be a different case. Instead of providing an explanation, however, the ALJ simply adopted the VE's boilerplate statement that no conflict exists. In doing so, the ALJ failed to explain, as required, why a claimant limited to simple, routine tasks can perform jobs requiring a reasoning level of three.

The Commissioner further argues that the time for Plaintiff to point out a conflict between the VE's testimony and the DOT was at the hearing when the VE testified that no conflict existed. Doc. 22 at 21-22. This Court, like the Tenth Circuit, agrees that addressing this issue at the hearing would have been more efficient. *Hackett*, 395 F.3d at 1176 ("[H]ad this conflict been raised at that time, the ALJ could have responded by explaining or changing his ruling."). Although noting that remand in such circumstances is "unfortunate," however, the Tenth Circuit followed the instructions of the Supreme Court that "a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates." *Id.* (citing *Sims v. Apfel*, 530 U.S. 103 (2000)).

Finally, the Commissioner argues that the jobs identified have a specific vocational preparation (SVP) level of two, which correspond to jobs that require "little or no judgment to do

simple duties that can be learned on the job in a short period of time." Doc. 22 at 22. As such, the Commissioner argues, no conflict exists. *Id.* The first problem with this argument is that, although the jobs at issue might have an SVP of two, the SVP and the reasoning-level codes measure different things. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (identification of unskilled jobs "just accounted for issues of skill transfer, not impairment of mental functions—which are not skills, but, rather, general prerequisites for most work at any skill level" (internal quotation marks omitted)). More significantly, however, *Hackett* forecloses this argument. *Hackett*, 395 F.3d at 1176 (recognizing that many unskilled, sedentary jobs require reasoning levels of two or higher (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)).

### B. The Error Is Not Harmless.

The Commissioner argues that, even if error exists with respect to the reasoning-level-three jobs, the ALJ still identified other representative jobs at a reasoning level of one or two that exist in significant numbers. Doc. 22 at 23-24. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In this context, a harmless error analysis would ask whether, after striking the jobs of document preparer and routing clerk, the number of jobs identified in the other four positions are still so numerous that a reasonable factfinder would be compelled to find that they exist in significant numbers in the national economy. *Id.*; *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Here, once the erroneous jobs are subtracted from the total number of jobs the ALJ found "significant" in this case, the remaining number of jobs amounts to 91,000 ("folder" at 16,000 jobs; "laundry sorter" at 6,000 jobs; "laundry worker" at 26,000 jobs; and "recycler" at 43,000 jobs). In *Allen*, the Tenth Circuit warned that a harmless-error determination, *i.e.*, "deciding in

the first instance that a particular number was significant under the circumstances," is different than cases which "involved court review of a *finding* of numerical significance *made by the ALJ*." 357 F.3d at 1144. That is, instead of conducting a substantial evidence review, a court performing a harmless error analysis is essentially "supply[ing] a missing dispositive finding." *Allen*, 357 F.3d at 1140. "[J]udicial line-drawing in this context is inappropriate." *Id.* "[T]he issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (internal quotation marks omitted).

The only published guidance available from the Tenth Circuit is that 1.34 million jobs is a sufficient number to affirm on the basis of harmless error. *Raymond*, 621 F.3d at 1274. An unpublished case indicates that 152,000 jobs in the national economy is significant as a matter of law. *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008). District courts in the Tenth Circuit have declined to find harmless error when jobs exist in the national economy that number 49,957; 55,000; 39,000; 18,000; and 30,000. *See Ferguson v. Berryhill*, No. 16-1348, 2017 WL 2536436, at *5-6 (D. Kan. June 6, 2017) (collecting cases). In this district, in a thorough opinion, Judge Browning determined that 50,000 is not enough. *Sears v. Berryhill*, No. 17-0391, 2018 WL 2002487, at *8-11 (D.N.M. Apr. 30, 2018). And, in the past, this Court has declined to find 78,000 to be significant on harmless error review. *Montoya v. Berryhill*, No. 16-1089, 2018 WL 1580296, at *4 (D.N.M. Mar. 28, 2018). That leaves the Court in a difficult situation with respect to 91,000 jobs. The Court finds that although 91,000 is close to a number that would be significant as a matter of law, it still falls short of that mark. Given the high bar the Tenth Circuit

has set for a court to determine significance as a matter of law, the Court declines to conclude as a matter of law that 91,000 jobs in the national economy constitutes a significant number.

The Commissioner cites several cases in support of its harmless error argument. Doc. 22 at 23. The Court disagrees that these cases support a finding that 91,000 is significant as a matter of law. It is true that, as the Commissioner argues, some courts have interpreted *Rogers v. Astrue*, 312 F. App'x 138, 141-42 (10th Cir. 2009), as implying that 11,000 jobs in the national economy was significant on harmless error review. Doc. 22 at 23; *see Fox v. Colvin*, No. 14-489, 2015 WL 5178414 (W.D. Okla. Sept. 3, 2015); *see also Evans v. Colvin*, 640 F. App'x 731, 735 (10th Cir. 2016) ("In . . . *Rogers v. Astrue*, . . . we implied that 11,000 national jobs was a significant number."). The Tenth Circuit in *Rogers*, however, did not conduct a harmless error review; therefore, *Rogers* provides no guidance in a harmless error analysis.

In *Rogers*, the Tenth Circuit resolved an apparent conflict between the VE testimony and the DOT by finding that, while three out of four identified jobs involved light work, the VE had testified that 11,000 jobs existed in the fourth occupation that were sedentary. 312 F. App'x at 141. Given that the Tenth Circuit rejected three out of four jobs the ALJ relied on and found that only 11,000 jobs of the fourth occupation were suitable, it appears that a harmless error analysis in *Rogers* might have been appropriate. *Id.* But that is not the analysis in which the court engaged. The *Rogers* panel instead found "no error." *Id.* Given that the panel found no error, no need existed to conduct a harmless error review. Therefore, *Rogers* stands only for the proposition that error does not necessarily occur when a VE identifies some sedentary jobs that fit a claimant's RFC while identifying other light jobs that do not fit the RFC. That holding is difficult to reconcile with SSR 00-4p, which requires the ALJ to identify and explain all conflicts between a VE's testimony and the DOT. But, whether *Rogers* was correctly decided or not, it

engaged in no harmless error analysis and so has no bearing on the Court's consideration of whether the error it has found to exist in this case is harmless.

The other cases the Commissioner cites[6] are also inapposite because they are not harmless error cases. In all of those cases, the district court reviewed an actual ALJ finding — that the precise job numbers in question were significant in the national economy. In contrast, the ALJ in the present case never determined that the 91,000 jobs at issue are significant in the national economy. Thus, the Court now deals with the entirely separate question of whether it can step in the shoes of the ALJ and determine, pursuant to a harmless error review, that these 91,000 jobs are significant in the national economy. To make such a determination, the Court would have to conclude that, if an ALJ were to determine that 91,000 jobs were not enough for significance in the national economy, that ALJ must necessarily be "an irrational factfinder, or . . . wrong as a matter of law." *Sears*, 2018 WL 2002487, at *11. The Court declines to make such a conclusion and, therefore, finds that the ALJ's error in this case was not harmless.

### C. Remaining Claims

The Court will not address Ms. Olguin's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[6] Doc. 22 at 23-24 (citing *Padilla v. Berryhill*, No. 16-106, 2017 WL 3412089 (D.N.M. Mar. 28, 2017); *Breslin v. Colvin*, No. 15-100, 2016 WL 5408126 (E.D. Ok. Sept. 28, 2016); and *Harden v. Colvin*, No. 14-3225, 2016 WL 354856 (D. Colo. Jan. 29, 2016)).

## IV. Conclusion

For the reasons stated above, Ms. Olguin's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 24) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**